NICHOLAS A. TRUTANICH
United States Attorney
Nevada Bar. No. 13644
BIANCA R. PUCCI
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Bianca.Pucci@usdoj.gov

*Attorneys for United States of America*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ANDRES RAFAEL VIOLA,<br><br>　　　　Defendant. | Case No.: 2:20-cr-00016-RFB-EJY<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

**CERTIFICATION: The undersigned counsel certifies that this memorandum is timely filed**.

## I.　　Introduction

For years, Andres Rafael Viola vaginally and anally raped a seven-year-old female child with whom he had supervisory control. What's more, Viola recorded his sexual assaults upon this child and then shared those recordings with other child sex offenders throughout the world. Viola also possessed a collection of 333 images and one video of child pornography of other victims of child sexual assault.

Viola's actions in this case prescribe a sentence of 420-months (35 years). A 420-month sentence is sufficient but not greater than necessary to further the goals of

sentencing. The government further requests a lifetime term of supervised release to follow his incarceration, with all conditions recommended in the Presentence Investigation Report to be imposed.

## II.    Factual Background

In May of 2019, Yahoo, Inc. reported to the National Center for Missing and Exploited Children that one of its users received 14 images of child pornography on Yahoo's servers. PSR at ¶ 8.  That Yahoo user resided in Syria and received the images from Andres Rafael Viola, who was using the darkweb Tor network to distribute images of child pornography. *Id.* TorChat is used to anonymize chat messages between users. *Id.* Viola and the Syrian Yahoo user used it to anonymize their trading of child pornography with one another. *Id.*

The images Viola sent to the Syrian user depicted Viola raping a minor female child who was approximately seven-years-old, known herein as VICTIM 1. PSR at ¶ 9. From the photos, it was apparent that Viola was the person taking the photos with a cell phone camera, and that the photos had been taken on various dates in multiple locations within the same home. *Id.* The images depicted Viola vaginally and anally penetrating VICTIM 1 with his erect penis. PSR at ¶ 9, 10, 16.

On June 7, 2019, Homeland Security special agents arrested Viola at his home in Las Vegas, Nevada. PSR at ¶ 12-13. Law enforcement determined that Viola had supervisory control over VICTIM 1 at all relevant times. PSR at ¶ 9, 18. Agents seized multiple devices from Viola's home including two cell phones Viola had on his person. PSR at ¶ 14. Valid search warrants for the devices found in the house and on Viola and the subsequent forensic examinations revealed extensive evidence of Viola's sexual exploitation of VICTIM 1. PSR at ¶ 15-20. The forensic examination also revealed a

curated collection of child pornography from other known victims. PSR at ¶ 15. Specifically, the forensics recovered images matching the images Yahoo reported, and 333 additional child pornography images and one video. PSR at ¶ 15, 22.

The video found on Viola's phone depicts Viola vaginally raping VICTIM 1 and asking her whether he should ejaculate inside her vagina. PSR at ¶ 18. This video was created using Viola's phone at Viola's home in Las Vegas, Nevada. *Id.* The examination showed that Viola had created all images and videos of his sexual exploitation of VICTIM 1 from his Samsung cell phone and other devices manufactured outside the state of Nevada. PSR at ¶ 20. Dates and times on the images and videos showed that Viola had groomed and raped the child on multiple occasions over the course of years. *Id.* Evidence showed that, in an attempt to evade law enforcement detection, Viola had used the darkweb to distribute, trade, and share the images of his sexual exploitation of VICTIM 1. PSR at ¶ 8, 11, and 20.

Viola was charged in Nevada state court for offense arising out of this investigation in June of 2019. PSR at page 2 "Release Status." Between June 2019 and February 2020, the government, the state, and Viola negotiated a global plea agreement to resolve both his state and federal charges. On February 20, 2020, Viola was charged by Information with Count One: *Sexual Exploitation of Children*, in violation of 18 U.S.C. § 2251(a), and Count Two: *Possession of child Pornography*, in violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 6. On the same day, Viola made his initial appearance and waived indictment. ECF No. 5 and 9. The government and Viola entered into a plea agreement in which Viola agreed to be sentenced to a term of 420-months with lifetime supervision to follow. ECF No. 11. The parties jointly recommended that Viola be given credit for the time he has been in State Custody from the date of his arrest to the date of any release from state custody, which

would be accounted for under a variance. *Id.* Lastly, the parties agreed that the sentence would run concurrent with Viola's sentence of 35 years to life in the State of Nevada case number C-19-345562-1.

### III.   Points and Authorities

#### A.  The Applicable Sentencing Guidelines

The parties jointly agreed and stipulated that the Court should use the base offense level and adjustments as identified in the plea agreement. ECF No. 11. The United States Probation Office calculated the advisory sentencing guidelines consistent with the parties' agreement as set forth in the plea agreement.[1] Viola's total offense level is 43, with a criminal history category I. The advisory guideline range is life. For *Sexual Exploitation of a Minor*, the statutory maximum sentence is 30 years and the mandatory minimum sentence is 15 years. For *Possession of Child Pornography*, the statutory maximum sentence is 20 years. As such, Viola's guideline range is 600 months. *See* USSG § 5G1.2(b) (when the guideline is life, the statutory maximum sentences per count are to run consecutive).

#### B.  Term of Imprisonment

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carry*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). The Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," "the

---

[1] The plea agreement correctly identified the enhancements, but miscalculated the total offense level for Count 2. This miscalculation did not affect the final guideline offense level.

4

need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution. 18 U.S.C. § 3553(a). Considering the relevant factors, the Court should impose a 420-month sentence.

Viola vaginally and anally penetrated a child within his supervisory control over a course of years. He recorded the multiple sexual assaults he perpetrated upon that child and then distributed those images and videos throughout the world.

Not only did he produce and then distribute child pornography, he also possessed child pornography of other children. Child pornography offenses are not victimless crimes. *United States v. Boos*, 127 F.3d 1207, 1211 (9th Cir. 1997). Every time a pedophile views an image of child pornography, he causes harm. *United States v. Blinkinsop*, 606 F.3d 1110, 1117 (9th Cir. 2010). Viola created that perpetual agony for a child within his supervisory control.

Viola created, viewed, collected, and uploaded images and videos that depicted the violent and morally repugnant sexual assaults of children. All of the children depicted in Viola's collection were victimized by his actions. VICTIM 1 was particularly victimized by his actions as he committed the hands on offenses of VICTIM 1 that are the subject of images and videos that have now entered the illegal marketplace. Viola, who was in a position intended to protect VICTIM 1, was in fact the person VICTIM 1 needed to be protected from.

Previous victims of child pornography have described—in detail—the pain that they continually suffer based upon the possession of images and videos of their abuse by individuals like Viola. Images of child pornography depict the worst and most intimate days of a child's life—the day that they were raped, tortured, assaulted, and abused—often

times by someone they trusted—like a father, uncle, friend, or coach. Viola raped a child who *trusted* him. He repeatedly got sexual pleasure from a child's humiliation and pain.

Short of death, there is no greater harm that could be inflicted on a child. Because of Viola, there are *new* images and videos in the market. Because of people like Viola, there is a market for these images without which the abuse would have ended at a finite point. In this way, child pornography is the worst type of exploitation because it is never-ending. Victims, like VICTIM 1, have to live knowing that their abuse is being shared online to satisfy the sexual desires of deviants who seek it out and make it available to others. Viola may get to avoid a life sentence in this case but VICTIM 1 does not. VICTIM 1's abuse does not end at this finite point because Viola uploaded those images and videos of VICTIM 1's abuse and shared it with the world.

In 2012, the Sentencing Commission submitted its most recent evaluation of the child pornography guidelines in its Report to the Congress: Federal Child Pornography Offenses (*available at* http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses) (the "2012 Report"). The 2012 Report opens stating: "All child pornography offenses, including the simple possession of child pornography, are extremely serious because they both result in perpetual harm to victims and validate and normalize the sexual exploitation of children." *Id.* at vi.

The 2012 Report further describes how the Internet has perpetuated and heightened the harm to victims by causing them to "live with persistent concern over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification and potentially for 'grooming' new victims of child sexual

abuse." Internet possession is a lifelong harm. Moreover, online communities validate and escalate the abuse of children and normalize this horrific violence.[2] *Id.* at vi-vii.

At the beginning of its report, the Sentencing Commission emphasized the terrible impact of child pornography. It described what those in the criminal justice system have long known: child pornography has a highly destructive, life-long impact on victims. It devastates children and undermines all of society because the effects of this abuse extend to those who are close to the victim, including parents, partners, spouses, friends, and siblings, and because it destroys the fabric of a community when rape, violence, and exploitation of children are normalized and traded, collected, and used for sexual gratification.

In April 2020, the Sentencing Commission submitted an evaluation of the effect various lengths of sentences had on recidivism in its report "Length of Incarceration and Recidivism." *Available* at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf (the "2020 Recidivism Report"). The Commission analyzed the relationship between length of incarceration and recidivism by examining five study units through three models. *Id*. at 30. In its evaluation, "[t]he Commission consistently found that incarceration lengths of more than 120 months had a deterrent effect." *Id*. at 4. It found that offenders who served sentences longer than ten years were 30 to 45 percent less likely to recidivate eight years after release. *Id*. at 30. Offenders incarcerated between 60 and 120 months were

---

[2] One online community discussing the most commonly traded child pornography series included this statement: "The [series name] vids are the absolute best cp I've ever found. The little cocksucker was so fucking hot. There's one vid in particular where her [abuser] is fucking her ass while she rubs her clit, and she has the most satisfied look on her face as she cums. I used the vids as 'training' films when I started fucking my own daughter, and they really helped her get into it."  This victim has been stalked on multiple occasions by "fans" of her exploitation, and has been harassed by others to make adult pornography as an ode to her childhood sexual exploitation at the hands of her abuser. Viola and others like him are the cause of this victim's ongoing trauma.

approximately 17 percent less likely to recidivate during the same time period following release. *Id*. For incarceration lengths of 60 months or less, there was no statistically significant deterrent effect. *Id.* Based on this data, the 2020 Recidivism Report concluded that sentences of 60 months or more had a statistically significant effect on deterrence and recidivism. *Id.*

Viola's actions warrant a sentence of 420 months. The Ninth Circuit has upheld much longer sentences for defendants convicted of similar charges. In *United States v. Wilkinson*, 706 F. App'x 337, 341 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018), the Ninth Circuit upheld a 130-year sentence as substantively reasonable. The District Court sentenced the defendant to the statutory maximum for each charged count and ran the sentences consecutively with each other. *Id.* Other courts around the country have likewise imposed life sentences—or the equivalent of life sentences—against child pornography offenders with similar charges. *See United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (750-year sentence); *U.S. v. Hamilton*, 548 F. App'x. 728 (2d Cir. 2013) (150-year sentence); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) (140-year sentence); *United States v. Castillo*, 427 F. App'x. 748 (11th Cir. 2011) (130-year sentence); *U.S. v. Hodge*, 729 F.3d 717 (7th Cir. 2013) (115-year sentence); *U.S. v. Williams*, 561 F. App'x. 784 (11th Cir. 2013) (100-year sentence); *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (100-year sentence); *U.S. v. Herrick*, 512 F. App'x. 534 (6th Cir. 2013) (95-year sentence); *United States v. Snyder*, 425 F. App'x. 64 (2d Cir. 2011) (75-year sentence); *U.S. v. Boroczk*, 705 F.3d 616 (7th Cir. 2013) (70-year sentence); *United States v. Miller*, 538 F. App'x. 501 (5th Cir. 2013) (70-year sentence).

Cases in this district show that judges in Nevada also recognize the extreme harm that these crimes inflict on their victims. In a recent case, Lonny Ditirro was found guilty of

four counts of child exploitation and one count of possession of child pornography and was sentenced to 140 years. 2:16-CR-00216-KJD-VCF. A sentence of 140 years was reached in Ditirro by imposing the statutory maximum sentence of 30 years on each of the four counts of child exploitation and the statutory maximum sentence of 20 years on the single count of possession, with all counts to run consecutive. Ditirro's 140-year sentence is consistent with the sentences imposed on similarly situated defendants across the country.

Judge Dorsey also recently sentenced Antonio Masters (a 28-year-old man) to nearly 30 years imprisonment on a single count of Sexual Exploitation of a Minor for a single victim. 2:17-CR-007-JAD-CWH. Judge Du sentenced Danny Salzer (a 53-year-old man with end-stage stomach cancer) to 17-and-a-half years' imprisonment, an effective death sentence, on three counts of Sexual Exploitation of a Minor and a single count of Possession of Child Pornography. 2:18-CR-189-MMD-EJY.

Nevada judges are doing exactly what other judges are doing across this country because they realize that production of child pornography is the most damaging child exploitative harm that can be done to a child. The government's request for a 420-month sentence, 180-months below the applicable guideline range, for Viola's convictions for sexual exploitation of children and possession of child pornography are lower than similarly situated defendants. The sentence is substantively reasonable and warranted. A sentence of 420 months serves a strong deterrent purpose to Viola and other pedophiles and child molesters like him while also giving Viola credit for his acceptance of responsibility. To give him any further variance would defy the goals of sentencing set forth in § 3553. The government's requested sentence in this case reflects careful consideration of the facts, the responsibility taken by Viola, and every possible benefit of § 3553 given to him. The 420-month sentence is the bare minimum to give adequate consideration to the need to

reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment.

In many ways, this Court's task is simple—it must protect the public. 18 U.S.C. § 3553(a)(2)(C). Unfortunately, Viola has shown this Court that the only way to protect the public is to incarcerate him for a significant period of time. These considerations demonstrate that a 420-month sentence is reasonable, as it is already a 180-month downward variance from the guideline sentence. Moreover, since the offense has aggravating but not mitigating circumstances, this demonstrates that a 420-month sentence is the only thing that can provide deterrence and protect the community. 18 U.S.C. § 3553(b)(2)(A)(i-ii). A lengthy sentence is the only thing that will protect the public from Viola's sexually deviant behavior toward children. This sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and most importantly, to protect the public.

### C. Supervised Release

The government requests a lifetime term of supervised release. Viola's hands-on sex offenses against children should give the Court significant pause. Viola's likelihood to re-offend will likely be reduced and his rehabilitation will be improved if he remains on supervision for the longest period of time possible. In any event, this long term of supervision will give the community and children in general solace that Viola is under the watchful eye of the Court. Aside from sex offender rehabilitation, which is undoubtedly warranted in this case considering Viola's admitted deviant sexual behavior, he would also benefit from the recommended special conditions. Lifetime supervision will go far in keeping the community safe from Viola's future crimes and providing offender

management services. Lifetime supervision serves the purpose of helping Viola stay accountable and continue to receive treatment after his release from custody, and keep the community safe.

As specified in the plea agreement, Viola agreed to the imposition of special conditions of supervised release. ECF No. 9. The government requests that the special conditions as agreed upon be imposed during Viola's time of supervised release. Conditions of supervised release may only be imposed if they are reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender. 18 U.S.C. §§ 3583(d)(1), 3553(a). However, conditions of supervised release need not relate to the defendant's underlying convicted offense, so long as they relate to at least one of these goals. *United States v. Wise*, 391 F.3d 1027, 1031 (9th Cir. 2004). The Ninth Circuit has consistently held that as long as the district court makes a factual finding which establishes a nexus between the condition and one of the goals articulated in 18 U.S.C. § 3553(a)(2)(B)-(D), the district court is not abusing its discretion to impose such a condition. *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988), *see also United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009). Each of the conditions listed in the PSR are related to Viola's deterrence, protection of the public, or Viola's rehabilitation. As such, we ask that the special conditions be imposed as agreed upon.

### IV. Conclusion

This Court should give proper weight to the significance of Viola's crimes and the facts of this case. Doing so will lead to the conclusion that a 420-month sentence, which is still a lower sentence than the guideline sentence, is not only appropriate, but also fundamentally sufficient but not greater than necessary to meet the goals of sentencing. Viola has destroyed the childhood of at least one live hands-on victim, and continues to deprive victims of child pornography of their chance to move past their exploitation. And, he does this for no other reason than his own pedophilic pleasure. Society must be protected from him for as long as legally possible.

The government requests that this Court sentence Viola to 420-months[3] in custody with lifetime supervision to follow. Any further downward adjustment would negate the seriousness of this offense, fail to deter future conduct, and result in unwarranted sentencing disparities. Based on the totality of circumstances, the requested 420 months followed by lifetime supervised release is sufficient but not greater than necessary to comply with the §3553 factors.

Dated this the 8th day of July 2019.

Respectfully Submitted,

NICHOLAS A. TRUTANICH
United States Attorney

//s//
BIANCA R. PUCCI
Assistant United States Attorney

---

[3] Viola was arrested on June 7, 2019, and remained in state custody until February 20, 2020. As of that date, Viola was held in custody on his federal case. As such, a credit of 8 months should be reflected in the judgment as a variance.